UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-367-CR-LENARD (Ferguson)

MITCHELL HAMMER,

        Petitioner,

v.

LOREN A. GRAYER, WARDEN,
FEDERAL CORRECTIONAL INSTITUTION,
MIAMI, FLORIDA

and

FEDERAL BUREAU OF PRISONS,

        Respondent(s).

*(Filed stamp: JUN 23 2004, CLARENCE MADDOX, CLERK U.S. DIST. CT., S.D. OF FLA. - MIAMI)*

*(Stamp: 04-21538 CIV-LENARD MAGISTRATE JUDGE WHITE)*

## 28 U.S.C. § 2241 HABEAS CORPUS MOTION REQUESTING DISTRICT COURT TO ORDER BUREAU OF PRISONS TO RECALCULATE PETITIONER'S GOOD CONDUCT TIME BASED ON SENTENCE RATHER THAN ON TIME ACTUALLY SERVED, CONSISTENT WITH TITLE 18, U.S.C., SECTION 3624(b) WITH MEMORANDUM OF LAW IN SUPPORT INCORPORATED

The issue before this Honorable Court is whether Petitioner, Mitchell Hammer, a federal prisoner proceeding <u>pro se</u>, is entitled to a good conduct time ("GCT") credit of fifty-four (54) days for each year of his 9-year sentence, as 18 U.S.C.§ 3624(b) provides; <u>or</u> whether he is entitled to only forty-seven (47) days of good conduct time credit for each year of his sentence, based on the Federal Bureau of Prisons ("BOP") formula set forth in BOP Policy Program Statement No. 5880.28-<u>Sentence Computation Manual-CCA</u>. Despite the express intent of Congress to apply good time credits to the "term of imprisonment" imposed by the sentencing judge, the BOP has construed an unsupportable interpretation that applies good time only to time actually served. Simply, this means that Petitioner and others like him are imprisoned seven (7) days more per year than Congress intended. The issue breaks down to the difference of computing this good conduct

time credit <u>at the time of sentencing</u>, or as the BOP argued in recent litigation, <u>after an inmate serves the time</u>.

This petition mirrors the recent historic and significant decision, wherein U.S. District Court Chief Judge Crabb of the Western District of Wisconsin, ruled that the BOP has been miscalculating the "good time" credits it grants to federal prisoners by short-changing them seven (7) days each year. Her decision was based on the plain language of the governing "good time" statute -- 18 U.S.C.§ 3624(b) -- as well as the unambiguous intent of Congress. Chief Judge Crabb granted the habeas petition (28 U.S.C. § 2241) of Yancey White, a federal inmate serving a 10-year sentence in Oxford, Wisconsin, and ordered the BOP to release him 70 days (7 additional GCT days per year x 10 years) earlier than it planned. (See <u>White v. Scibana</u>, No. 03-C-581-C, W.D. WI, "Opinion and Order", dated 04-23-04).

Consistent with <u>White</u>, Petitioner respectfully requests this Honorable Court to order Respondent(s) to recalculate his GCT, consistent with 18 U.S.C.§ 3624(b), on the basis of fifty-four (54) days for each year of his 9-year sentence (54 days per year x 9 years =486 days of GCT), rather than limiting the application of GCT to forty-seven (47) days for each year (47 days per year x 9 years = 423 days) based on the time he actually serves. (See <u>Exhibit "A"</u>-Sentence Computation Monitoring Data Sheet). As a result, this Court's order will require the BOP to release Petitioner on February 27, 2005, rather than on May 1, 2005 -- the BOP's improperly calculated date (<u>see</u> <u>Exhibit "A"</u>), sparing him an additional sixty-three (63) days of wrongful over-incarceration (7 additional days per year x 9 years).

2

## FACTS

On February 28, 1997, Petitioner was sentenced by the Honorable Wilkie D. Ferguson, Jr. (now deceased) to 108 months of imprisonment (less good time credits) based on <u>concurrent</u> sentences of: (1) 60 months for violations under 18 U.S.C. § 371 and § 152 (counts 1 and 83); and, (2) 108 months for a violation under 18 U.S.C. § 1956 (count 71).

On June 30, 1997, Petitioner began serving his 108-month (9-year) "term of imprisonment." Petitioner is currently entitled to the maximum good time credit allowed under § 3624(b) because of his clear record of conduct.

Petitioner's full-term sentence expiration date is June 29, 2006. Assuming that Petitioner receives properly calculated credit towards his "sentence of imprisonment" of: (1) one day of jail credit time from June 1, 1995 when he was arraigned, and (2) 486 days of statutory GCT (54 days per year x 9 years), Petitioner's statutory release date should be February 27, 2005.

However, the BOP's Sentence Computation Monitoring Data Sheet for Petitioner reflects a statutory release date of <u>May 1, 2005</u> because the "Total GCT Possible" is limited to <u>423</u> days. (<u>See</u> <u>Exhibit</u> "A")

The BOP is shortchanging Petitioner 63 days of GCT credit (7 days per year x 9 years), just like it shortchanged Yancey White by 70 days (7 days per year x 10 years), until Chief Judge Crabb (W.D. Wisc.) ordered White released earlier.

## RIGHT TO GOOD TIME CREDIT REVIEW

A federal prisoner has a right to seek review of any aspect of his imprisonment, including good conduct time computation, by the Attorney General, who initially possesses that exclusive authority under the law. See Dawson v. Scott, 50 F.3d 884 (11th Cir. 1995  ); see also 18 U.S.C.§ 3585 ; 28 C.F.R.§542.10 (1989). The traditional rule is that "the granting of credit for time served is, in the first instance, an administrative, not a judicial function." United States v. Flanagan, 1544, 1546 (11th Cir. 1989). Under the administrative procedure, an inmate may seek formal review of his complaint by the Warden of the federal institution where he is incarcerated. If dissatisfied with the result, the inmate may appeal that decision to the Regional Director of the BOP, and ultimately to the Office of General Counsel for the BOP. See 28 C.F.R.§542.13(b),§542.15 (1989).

With only a few exceptions, a federal inmate must exhaust his or her administrative remedies before petitioning the federal courts. Rodriguez v. Lamer, 60 F.3d 745, (11th Circuit, 1995  ). However, exhaustion of administrative remedies is **not required** when the administrative process would be **futile**. See Terrell v. Brewer, 93 F.2d 1015, 1019, 9th Cir. 1991). See Exhibit "B"-Affidavit in Support.

In this case, Petitioner is not required to pursue his administrative remedies because he would certainly be denied based on "official BOP policy." Fraley v. Bureau of Prisons, 1 F.3d 924, 953 (9th Circuit, 1993)(administrative remedies futile when request is contrary to BOP policy). BOP Policy Program Statement No. 5880.28-Sentence Computation Manual--CCA and Title 28, C.F.R., Section 523.20, direct the BOP's method to calculate GCT. Review of recent efforts for administrative remedy by other federal prisoners raising the identical issue raised in this petition, only reiterates the futility

4

because the BOP denied relief in each instance, due to its policy. (E.g. White v. Scibana, 03-C-581-C (W.D. WI, 2003); Mujahid v. Daniels, 03-36038, (9th Cir. 2004)). For example, in White, Yancy White argued that his release date did not reflect 54 days for each of the 10 years of his sentence -- i.e. 540 days, but rather only 470 days based on 47 days of GCT credit for each year he spent in prison. White pursued the full range of administrative remedies required by the BOP. After the BOP refused to change its position, White filed a habeas motion under 28 U.S.C. §2241 in the Wisconsin U.S. district court. The BOP continues litigating the matter, now on appeal, asserting that its policy and method of applying GCT are consistent with a proper interpretation of 18 U.S.C. § 3624. See Footnote 1 below.

Beyond the administrative process, a habeas corpus motion, pursuant to 28 U.S.C. Section 2241, is the proper vehicle for challenging the calculation of his GCT. Bell v. United States, 48 F.3d 1042, 1043 (8th Cir. 1995 ); and, this Court has jurisdiction to hear this petition. Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 494-96.

---

1. See Exhibit "C". Camper v. Benov, 966 F.Supp. 951 (C.D. Cal. 1997)(Head Note #5)(Since BOP determination ... was based on its official policy, ... subsequent administrative review certainly would have been denied under the same official policy; further exhaustion of administrative remedies would have been futile, and petitioner was not required to pursue them prior to bringing petition for writ of habeas corpus in federal court.

## ISSUE

Title 18, United States Code, Section 3624(b) requires the BOP to calculate an inmate's GCT on the basis of the inmate's sentence rather than on the time he has actually served. According to the statute, a federal inmate may earn up to fifty-four (54) days of GCT for every year of his "term of imprisonment." To determine the amount of time an inmate must serve each year, assuming he receives the maximum possible GCT of 54 days per year the simple formula is:

**365 days per year minus 54 days GCT = 311 days**

It follows that in order to satisfy his term of imprisonment, a federal inmate must serve a total number of days equal to:

**311 days per year x the length of sentence imposed (in years)**

Similarly, the maximum GCT credit should be calculated as follows:

**54 days x length of sentence imposed (in years)**

The method for calculating GCT is simple, straight forward and obvious. In fact, there is no other plausible method to apply the directive of 18 U.S.C. 3624(b).

Simply, based upon the BOP's formula, an inmate who receives a sentence of one year and one day can earn a maximum of 47 days of GCT, not 54 days. This policy, as detailed in BOP P.S. 5880.28 and 28 C.F.R. §523.20, forces prisoners to serve 87.2 percent of their sentence rather than 85 percent, as intended by Congress. Mathematically, an inmate may receive up to 54 days of GCT for every 419 days of his sentence. When prorated to 365 days, inmates receive only 47 days of GCT credit. The BOP's formula gives federal inmates only 12.8 percent GCT --- not the 15 percent intended by Congress.

6

## CONGRESS' INTENT IS VERY CLEAR, OBVIOUS AND KNOWN

Senator Joseph Biden co-authored the Comprehensive Crime Control Act of 1984. His statements regarding 18 U.S.C.§ 3624(b) serve as a legislative guide making clear Congress' intent to give inmates good time credit of up to 15 percent of their sentences:

> I was the co-author of that bill. In the Federal courts, if a judge says you are going to go to prison for 10 years, you know you are going to go to prison for at least 85 percent of that time - 8.5 years, which is what the law mandates. You can get up to 1.5 years in good time credits, but that is all. And we abolished parole. So you know you'll be in prison for at least 8.5 years.

141 Cong. Rec. S2348-01 (daily ed. Feb. 9, 1995)(statement of Senator Biden). He also stated:

> So my Republican friends in a compromise we reached on the Senate floor back in November ... we said no State can get any prison money unless they keep their people in jail for 85 percent of the time just like we do at the Federal level in a law written by yours truly and several others.

140 Cong. Rec. S12314-01, 41230 (August 23, 1994).

## FEDERAL COURTS ENDORSE IN PASSING THE 85 PERCENT RULE

Review of decisional case law absolutely demonstrates Congress' intent. It is well settled law that an inmate may be able to deduct up to 15 percent of his or her sentence by earning 54 days of GCT for every year of the sentence. See e.g. United States v. Martin, 100 F.3d 46, 47 (7th Cir. 1995)(good time on a 30 year sentence was 25.5 years); United States v. Hill, 48 F.3d 228, 233 (7th Cir. 1995)(prisoner would have to serve at least 18 months of 21 month sentence); United States v. Prevatte, 66 F.3d 840, 846 (7th Cir. 1995)(good time credits have the potential of reducing a sentence by 14.7 percent (54 days of a 365-day year).

7

The 15 percent formula also advances the purpose of simplifying the calculation of good time credits. <u>United States v. LaBonte</u>, 20 U.S. 751, 757 (1997)(agency interpretation must give way to Congress' intent).

The BOP's interpretation of §3624(b) is meaningless if the intent of Congress is clear. <u>Chevron U.S.A., Inc. v. National Resources Defense Council Inc.</u>, 467 U.S. 837, 842-43 (1984)(the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress)(Justice Scalia pointed out in a concurring opinion that <u>Chevron</u> does not require the judiciary to defer to executive interpretations of the criminal code).

**THE STATUTE MEANS WHAT IT SAYS**

Section 3624(b) reads:

> A prisoner who is serving a term of imprisonment of more than 1 year ... may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term.

The BOP's interpretation of 18 U.S.C.§ 3624(b) is <u>not</u> entitled to deference because Congress expressed its intent unambiguously in the statute. <u>See</u> <u>FDA v. Brown and Williamson Tobacco Corp.</u>, 29 U.S. 120, 125-26 (2000). The BOP's misinterpretation and erroneous application of GCT is based on its misinterpretation of the meaning of "sentence imposed." However, 18 U.S.C.§ 3624(b) cannot be ambiguous: "term of imprisonment" means "sentence imposed" and <u>not</u> "time served." Words in a statute are not to be read in a vacuum; courts must read the statute as a whole to aid in determining the meaning of each of its parts. <u>King v. St. Vincent's Hospital</u>, 502 U.S. 215, 221 (1991).

8

## IDENTICAL WORDS HAVE SAME MEANING IN SAME STATUTE

Identical words used in different parts of the same statute are presumed to have the same meaning. <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 570 (1996).

The phrase "term of imprisonment" is used several times in Section 3624. None of the uses supports a "time served" interpretation. For example, the first sentence of Section 3624(a) provides, "A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited ..." This sentence only makes sense if a "term of imprisonment" is another way of saying the sentence imposed and <u>not</u> time served. Conversely, if "term of imprisonment" means only the time <u>actually served</u>, the "less time credited" clause would not make sense because there would be no need to subtract "time credited" to determine the release date because GCT would already be taken into account.

The BOP's intepretation is further undercut by the language of the statute. If a prisoner does not comply with institutional regulations, there is a possibility that the prisoner will receive no credit "toward the service of the prisoner's sentence." In other words, credit is applied to the sentence, not to time served.

## A WORD HAS CONSISTENT MEANING THROUGH UNITED STATES CODE

"Where a word is given a consistent meaning through the United States Code, then the courts assume it has the same meaning in any particular instance of that word." <u>Firstar Bank, N.A. v. Faul</u>, 253 F.3d 982, 990 (7th Cir. 2001). The phrase "term of imprisonment" is used hundreds of times in the United States Code with the same meaning. In addition, Congress included the phrase "beyond the time served" to

9

eliminate misinterpretation. Without question, Congress' intent is clear and consistent about the meaning of "sentence imposed". E.g. 18 U.S.C. 3147 ("A term of imprisonment imposed pursuant to this section should be consecutive to any other sentence of imprisonment");18 U.S.C. 35 82 (discussing "factors to be considered in imposed a term of imprisonment"); 18 U.S.C. 3 584(a)("If multiple terms of imprisonment are imposed on a defendant at the same time ..."); 28 U.S.C. 994(b)("if a sentence specified by the guidelines induces a term of imprisonment, ... ").

Further, the United States Sentencing Guidelines, section 4A1.2, footnote 2 instructs that criminal history points are based on the sentence pronounced ("sentence of imprisonment"), not the length of time actually served. See U.S.S.G.§ 4A1.2(b)(1) and (2)(the term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed). Also see U.S.S.G.§5C1.1 (Imposition of a term of imprisonment discusses that a sentence conforms with the guidelines ... if it is within the minimum and maximum range of the applicable range). Also see U.S.S.G.§5 C1.1, Commentary, Application Notes 1 (a sentence of imprisonment of 33 months is within 33-41 month applicable guideline range for offense level of 20, criminal history category I.)

## BOP CONTRADICTS ITS INTERPRETATION OF 18 U.S.C.§ 36 24(b)

Nonetheless, the BOP's misinterpretation of Congress' intent results in its method to calculate GCT based on "time served". However, in United States v. Shinners, 892 F.2d 742 (8th Cir. 1989), when the defendant argued that his "term of imprisonment" was only five months --- the time he served -- because he was paroled after serving

10

five months of his 30 month sentence, the United States appealed and argued that the "term of imprisonment" is the maximum sentence he must serve. Indeed, the 8th Circuit Court of Appeals held that a "term of imprisonment" is the maximum term he was sentenced to serve, <u>not</u> on the time actually served. <u>See</u> <u>U.S.S.G.</u>, Appendix C, Amendment 381.

**RULE OF LENITY APPLIES TO 18 U.S.C. § 3624(b) IF AMBIGUOUS**

The Federal good time law is a penal statute to which the "rule of lenity" applies. In a worse case, <u>if</u> "term of imprisonment" is ambiguous, U.S. Supreme Court authority requires the application of the "rule of lenity", <u>not</u> deference to the agency -- in this case, the BOP. The Supreme Court has found that good time statutes are penal in several contexts. <u>See</u> <u>Lynce v. Mathis</u>, 519 U.S. 443 (1997)(ex post facto); <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973)(habeas corpus).

Deference to the BOP's administrative construction of an ambiguous penal statute "would turn the normal construction of criminal statutes upside down, replacing the doctrine of lenity with the doctrine of severity." <u>Crandon v. United States</u>, 494 U.S. 152, 177-78 (1990)(Scalia, J. concurring).

The "rule of lenity" requires that ambiguity be <u>resolved in favor of the defendant</u>, which in this case, means by interpreting the credit to apply to the sentence imposed.

**SUMMARY**

The BOP's erroneous method to calculate GCT deprives Petitioner and every prisoner serving more than one year and less than life, a total of seven (7) days of GCT for each year of his or her sentence. Instead of 54 days per year of good conduct time, the BOP credits up to a maximum of 47 days. Although seven (7) more days a year in prison

may not sound like very much, any additional day in prison is one day too much. <u>Glover v. United States</u>, 531 U.S. 198, 204 (2001)(any over-incarceration is sufficient to meet the prejudice requirement for a Sixth Amendment violation of ineffective assistance of counsel).

Although the 85 percent rule was the basis for the statute, and has been recognized by federal courts across the land, it is ignored by the BOP. Under the BOP's interpretation of good time, which "mangles" the plain language of the statute and trumps Congress' stated intent to deduct up to 54 days per year for every year of a federal sentence, no federal prisoner, no matter how virtuous, ever serves less than 87.2 percent of the sentence imposed. In Petitioner's case, that 2 percent difference means 63 days of wrongful detention in federal custody.

Clearly, this is not what Congress intended.

## CONCLUSION

The language of §3624b) is clear and unambiguous. As such, the BOP "does not have discretion to interpret a statute that is unambiguous." Thus, the BOP does "not have the authority to promulgate a regulation that uses "time served" as the basis for the (good conduct time) calculation."

However, the BOP does have discretion to deny good conduct time when it concludes that an inmate's behavior does not warrant it. But, it does not have discretion to choose the method for calculating good conduct time. The statute does not say that the BOP may calculate GCT in any way it wants.

Though there are strong pressures against changing the BOP's flawed interpretation -- in part because of "administrative convenience" and perhaps possible embarrassment of the gatekeepers, Petitioner respectfully requests that this Honorable Court grant this petition for writ of habeas corpus under 28 U.S.C. §2241, and directs the BOP to credit Petitioner with 54 days good time for each year that he is eligible for the maximum credit -- up to a total of 486 days -- based on his 9-year sentence,[2] and not on the time Petitioner actually served.

Dated:  June 21, 2004                    Respectfully submitted,

                                         *Mitchell Hammer* (signature)
                                         Mitchell Hammer, pro se
                                         Reg. No. 48828-004
                                         Federal Prison Camp
                                         P.O. Box 779800
                                         Miami, FL  33177

---

FN 2. By increasing Petitioner's good time credit 63 days (i.e. 7 additional days per year times 9 years) from "Total Possible GCT" of 423 days to 486 days; and change his statutory release date from May 1, 2005 to February 27, 2005--63 days earlier. Similarly, Petitioner's halfway house transfer is scheduled on December 2, 2004 as of this petition. If petition is granted, halfway house transfer should be advanced 63 days to September 30, 2004.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing habeas corpus motion pursuant 28 U.S.C. § 2241 has been deposited this <u>21st</u> day of June, 2004 into the Bureau of Prisons' "mailbox", with sufficient prepaid postage for first class mail, properly addressed to: (1) Loren A. Grayer, Warden, Federal Correctional Institution, 15801 S.W. 137th Avenue, Miami, FL 33177, (2) Bureau of Prisons, 320 First Street N.W., Washington, D.C. 20534, and (3) AUSA Steven Petri, United States Attorney's Office, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, FL 33394.

*/s/ Mitchell Hammer*
Mitchell Hammer, <u>pro se</u>
Reg. No. 48828-004
Federal Prison Camp
P.O. Box 779800
Miami, FL  33177

EXHIBIT "A"

```
    MIAV7   542*22  *         SENTENCE MONITORING        *        06-15-2004
    PAGE 001 OF 001 *           GOOD TIME DATA           *        08:15:40
                              AS OF  06-15-2004

        REGNO...: 48828-004     NAME: HAMMER, MITCHELL
        ARS 1...: MIA A-DES                                   SRA
        COMPUTATION NUMBER..: 010              FUNC..: PRT    ACT DT:
        LAST UPDATED: DATE.: 07-21-1997        FACL..: MIA    CALC: AUTOMATIC
        UNIT................: CAMP J           QUARTERS............: J01-002L
        DATE COMP BEGINS....: 06-30-1997       COMP STATUS.........: COMPLETE
        TOTAL JAIL CREDIT...: 1                TOTAL INOP TIME.....: 0
        CURRENT REL DT......: 08-08-2005 MON   EXPIRES FULL TERM DT: 06-28-2006
(1)     PROJ SATISFACT DT...: 05-01-2005 SUN   PROJ SATISF METHOD..: GCT REL
        ACTUAL SATISFACT DT.:                  ACTUAL SATISF METHOD:
        DAYS REMAINING......:                  FINAL PUBLC LAW DAYS:

        -------------------------GOOD CONDUCT TIME AMOUNTS-----------------------
            (2)         (2)                                      (3)       (4)
          START        STOP      MAX POSSIBLE TO    ACTUAL TOTALS  VESTED   VESTED
          DATE         DATE      DIS    FFT         DIS    FFT     AMOUNT   DATE
          06-29-1997  06-28-1998  54      0                          54    07-13-1998
          06-29-1998  06-28-1999  54      0                          54    07-13-1999
          06-29-1999  06-28-2000  54      0                          54    07-13-2000
          06-29-2000  06-28-2001  54      0                          54    07-13-2001
          06-29-2001  06-28-2002  54      0                          54    07-13-2002
          06-29-2002  06-28-2003  54      0                          54    07-13-2003
          06-29-2003  06-28-2004  54
          06-29-2004  05-01-2005  45

          TOTAL EARNED AMOUNT..........................................:  324
(5)       TOTAL EARNED AND PROJECTED AMOUNT............................:  423  (5)
```

Notes: (Comments below and (numbers) above added by Petitioner)
1. Proj Satisfact DT (Projected Satisfaction Date) should be adjusted to 02-27-2005 because of additional sixty-three days of good conduct time to be credited.

2. Start date and Stop date above force Petitioner to serve one year before good conduct time, rather than being calculated on term of imprisonment which would result in Petitioner receiving fifty-four days of good conduct time after 311 days of prison time.
4. The BOP does not credit good conduct time until after Petitioner serves one full year.
5. The "Total Earned and Projected Amount" of 423 days is based on 47 days per year (423 days divided by 9 year sentence equals 47 days per year). Petitioner is due an additional seven (7) days of good conduct time for each of 9 years (the term of imprisonment), which entitles him to an additional sixty-three (63) days of good conduct time.

G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 95-367-CR-LENARD (FERGUSON)

MITCHELL HAMMER,                        :
                                        :
            Petitioner,                 :
                                        :
v.                                      :
                                        :
LOREN A. GRAYER, WARDEN,                :
FEDERAL CORRECTIONAL INSTITUTION        :
MIAMI, FLORIDA,                         :
                                        :
and                                     :
                                        :
FEDERAL BUREAU OF PRISONS,              :
                                        :
            Respondent(s).              :
_____:

## AFFIDAVIT IN SUPPORT OF PETITIONER'S 28 U.S.C. §2241 MOTION

Subject to the penalty for perjury, I, Mitchell Hammer, do solemnly swear that the following is true and correct, to the best of my knowledge and belief:

1. I am incarcerated at the Federal Prison Camp in Miami, Florida, where I have served since June 30, 1997.

2. On or about June 3, 2004, I spoke with Mr. Avila, Miami Federal Correctional Institution's Inmate Services Manager ("ISM") for approximately ten (10) minutes at "main line" regarding the Bureau of Prisons' method of calculating good conduct time ("GCT") credits, indicating that I believe I have been short-changed by 63 days.

3. I informed Mr. Avila that I have only been credited with 47 days for each year of my 9-year sentence, instead of 54 days as required by law.

4. Mr. Avila advised me that the Bureau of Prisons' method to calculate GCT credits is set forth in its "policy" program statement.

5. I asked Mr. Avila if he was aware of the recent favorable

decision in White v. Scibana, 03-C-581-C, W.D. WI, 4-23-04 wherein Chief Judge Crabb ordered the Bureau of Prisons to recalculate GCT for federal prisoner Yancey White, based on his 10-year sentence, rather than the time he served, with the result being an additional 70 days of GCT and his release from federal custody a like 70 days earlier than the Bureau of Prisons planned.

6. In response, Mr. Avila emphatically told me the following:

a. Judge Crabb "should never have written that opinion and order."

b. The case "is being reversed right now."

c. "The case doesn't apply to you or anyone else here because this is another district."

7. I told Mr. Avila that I agreed with Judge Crabb's opinion and believed I was "entitled to 63 days of additional GCT."

8. Mr. Avila told me that I was wrong and wasting my time. He added that he already denied dozens of inmates at FCI Miami who requested GCT credit recalculation consistent with White v. Scibana.

9. When I asked whether he would recommend that I pursue the Bureau of Prisons administrative remedy process, Mr. Avila told me that though it was my right, I was truly wasting my time because the Warden, Regional Director, and General Counsel in Washington will all deny any such request and merely support a denial by reciting the Bureau of Prisons policy program statement which governs sentence computation including GCT credit.

10. Mr. Avila ended our discussion by reiterating that "all of this should never have happened." and that there was "no chance the Bureau of Prisons will change its policy" to recalculate GCT, based on his long term tenure with the Bureau of Prisons, and his experience with these types of issues.

2

11. Based on Mr. Avila's guidance and advise as the institutional ISM, I concluded that all efforts for administrative relief would be futile and that my only chance for relief could result from a §2241 habeas corpus motion filed with the United States District Court.

Dated: June 21, 2004

AFFIANT: *Mitchell Hammer*
Mitchell Hammer
Reg. No. 48828-004
Federal Prison Camp
P.O. Box 779800
Miami, FL  33177

EXHIBIT "C"

**CAMPER v. BENOV**     **951**
Cite as 966 F.Supp. 951 (C.D.Cal. 1997)

prohibiting transfer issued. It is apparent to the Court on its face that the Amended Charging Order of the High Court of Justice issued on July 16, 1996[5] was intended to clarify the meaning and scope of the First Charging Order Absolute, issued on May 13, 1996, and thus operate *nunc pro tunc*. It does not represent a protected window in which liability on behalf of USST incurs. Thus, the Court does not find the plaintiff's theory of damages a viable basis for a claim.

*Conclusion*

Consequently, the motion is GRANTED; the Amended Complaint is ordered DISMISSED without prejudice.

IT IS SO ORDERED.



---

**Eugene CAMPER, Petitioner,**

v.

**Michael BENOV, Warden, Respondent.**

No. CV 96-4743-RC.

United States District Court,
C.D. California.

May 29, 1997.

Following affirmance of conviction for trafficking in counterfeit accessing device, 66 F.3d 229, and resentencing, defendant filed petition for writ of habeas corpus challenging Bureau of Prison's (BOP's) denial of early release based on completion of substance abuse program. The District Court, Chapman, United States Magistrate Judge, held that: (1) petition was not rendered moot by defendant's release from prison; (2) exhaustion of administrative remedies was futile; and (3) defendant was properly excluded from eligibility for early release based on prior state conviction for robbery.

Petition denied.

**1. Habeas Corpus ⬗=225**

Habeas corpus petitioner's release from prison did not render moot his challenge to Bureau of Prison's (BOP's) determination that his prior state conviction precluded early or advanced release based on completion of substance abuse program, as petitioner would be entitled to one-year reduction of his term of supervised release if successful. 18 U.S.C.A. § 3621(e)(2)(B).

**2. Evidence ⬗=43(3)**

In habeas corpus proceeding, court would take judicial notice of all records in case resulting in underlying conviction. Fed. Rules Evid.Rule 201, 28 U.S.C.A.

**3. Habeas Corpus ⬗=277**

Federal prisoners are generally required to exhaust their federal administrative remedies prior to bringing petition for writ of habeas corpus in federal court.

**4. Habeas Corpus ⬗=272**

Exhaustion of federal administrative remedies prior to bringing petition for writ of habeas corpus in federal court is not required if pursuing those remedies would be futile.

**5. Habeas Corpus ⬗=277**

Since Bureau of Prison's (BOP's) determination that petitioner's prior state conviction for robbery precluded early release for completion of substance abuse program was based on its official policy, and subsequent administrative review certainly would have been denied under same official policy, further exhaustion of administrative remedies would have been futile, and petitioner was not required to pursue them prior to bringing petition for writ of habeas corpus in federal court. 18 U.S.C.A. § 3621(e)(2)(B).

**6. Habeas Corpus ⬗=670(8)**

Habeas corpus petitioner's claim that Bureau of Prison's (BOP's) exclusion from eligibility for early release of inmate with

---

5. Plaintiff's Complaint was filed on July 1, 1996.