UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-21538-CIV-LENARD/WHITE

MITCHELL HAMMER,

                Petitioner,

v.

LOREN GRAYER, WARDEN,

                Respondent.

_____/

NIGHT BOX
FILED

AUG 2 3 2004

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

## GOVERNMENT'S RESPONSE TO HABEAS CORPOS PETITION

### PARTIES

I. _Petitioner_

The petitioner, Mitchell Hammer, federal register number 48828-004, is a 52-year-old male serving an aggregate term of imprisonment of 108 months, followed by a three-year term supervised released imposed under the Sentencing Reform Act of 1984 for violation of Title 18 U.S.C. §§ 371 & 152, Conspiracy to Commit Bank and Securities Fraud & Making a False Statement in a Bankruptcy Proceeding and for violation of Title 18 U.S.C. § 1956, Money Laundering. The petitioner has been confined at the Federal Correctional Institution (FCI), Miami since June 30, 1997, and has a projected release date of May 1, 2005, via Good Conduct Time. **(Attachment A, Public Information Inmate Data for Petitioner)**.

II. _Respondent_

Petitioner has named Loren Grayer as respondent in his petition. The proper party respondent to a § 2241 habeas corpus petition is the custodian of the prisoner. Braden v. 30th

Judicial Circuit Court of Kentucky, 410 U.S. 484, 495 (1973).  "Whenever a §2241 habeas Petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." Rumsfeld v. Padilla, — U.S. —, 124 S. Ct. 2711, 2724 (2004).  Thus, Warden Grayer is the proper party respondent in this action.

**SUBJECT MATTER JURISDICTION**

Petitioner invoked jurisdiction pursuant to 28 U.S.C. § 2241.  Since the petition has been filed under the federal habeas corpus statute, and since Petitioner is actually challenging the fact and/or duration of his confinement due to the administration by the Bureau of the computation of his good time credits, the proper jurisdictional basis for this claim is Title 28 U.S.C. § 2241. Section 2241 provides an avenue of relief for inmates challenging administration of their sentences.  Therefore, the Court has jurisdiction pursuant to section 2241.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973)(finding writ of habeas corpus is the "sole federal remedy" for inmates challenging "fact or duration of [their] physical imprisonment").  However, the court lacks jurisdiction as the Petitioner failed to exhaust administrative remedies and has failed to present the court with an actual case or controversy as discussed infra.

**IN PERSONAM JURISDICTION**

In a habeas corpus petition filed under § 2241, the writ can be sought by a federal prisoner only from a court with jurisdiction over the place of the prisoner's confinement. Rumsfield, — U.S. at —, 124 S. Ct. at 2722-26.  As both the Petitioner and his custodian, Warden Loren Grayer, are located at a correctional facility within the jurisdiction of the United

2

States District Court for the Southern District of Florida, this court has jurisdiction.

## VENUE

Section 2241's venue provisions indicate the petition may be brought in the district court serving the institution where the petitioner is confined.  28 U.S.C.  §2241(d).  Petitioner is confined in a correctional facility located in the Southern District of Florida, so venue is proper.

## SERVICE OF PROCESS

Service of process for section 2241 petitions is governed by 28 U.S.C. § 2243. Section §2243 requires only that the custodian of the prisoner be served with a copy of the petition and order to show cause.  As the custodian of the prisoner, Warden Loren Grayer, received a copy of the petition and Order to Show Cause, proper service has been effected.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Eleventh Circuit has consistently held federal inmates must exhaust available administrative remedies with the Attorney General, through the Bureau, prior to filing a writ of habeas corpus pursuant to § 2241.  See  Gonzalez v. United States, 959 F.2d 211 (11th Cir. 1992);  United States v. Mitchell, 845 F.2d 951 (11th Cir. 1988).  The Eleventh Circuit has held exhaustion of administrative remedies is jurisdictional when a petitioner files a writ of habeas corpus requesting release from a federal prison.  Winck v. England, 327 F.3d 1296, 1300 n. 1 (11th Cir. 2003) (recognizing that although there is no statutory requirement that a federal inmate exhaust his administrative remedies prior to filing a § 2241 writ of habeas corpus, exhaustion is nonetheless jurisdictional in the Eleventh Circuit);  Skinner v. Wiley, 355 F.3d 1293 (11th Cir. 2004) (holding prisoners seeking habeas relief are subject to the administrative exhaustion

3

requirement).

The Bureau has established an administrative remedy procedure through which a federal

prisoner may challenge any aspect of his imprisonment.  These procedures, codified at 28 C.F.R.

§ 542.10, et seq., provide three levels of appeal (institutional, regional, and national) available to

the inmate if the inmate has not been able to informally resolve his complaint.  A decision by the

Bureau is not final, and hence not reviewable by the Court, until relief has been denied at the

national level.  See 28 C.F.R. § 542.15(a)("Appeal to the General Counsel is the final

administrative appeal").

A review of the administrative remedy records maintained by the Bureau reflects

Petitioner **has not** exhausted his administrative remedies.  In fact, Petitioner has not filed a single

administrative remedy pertaining to the issue raised in his petition. **(Exhibit B, Administrative**

**Remedy Generalized Retrieval for Petitioner).**

### THE PETITION

The *pro se* Petitioner alleges the Bureau has misinterpreted the good conduct time statute

codified at Title 18 U.S.C. § 3624(b), thereby depriving him of receiving up to 54 days of credit

for each year of incarceration to which he was sentenced, which he claims he is entitled to

receive.  Through this petition, he seeks to have the court issue a writ granting him 54 days of

good conduct time for every year of the sentence which was imposed, rather than for every year

actually spent in prison displaying exemplary compliance with prison regulations, in

contradiction to the mandate of Title 18 U.S.C. § 3624(b).  Although the Petitioner fails to

specify whether the total GCT he alleges he should receive should be based upon the total of

4

each sentence imposed as opposed to his current aggregated term of nine years, it appears the Petitioner divides the total projected GCT credits by the total of the aggregated sentence imposed.

**FACTS**

I. Background

Petitioner was arrested on June 1, 1995, at which time he was released from custody on bond. On February 28, 1997, he was sentenced on several charges by the United States District Court, Southern District of Florida, to an aggregate term of 108-month sentence with a three year supervised release to follow. The sentences were imposed under the provisions of 18 U.S.C. § 3559, the Sentencing Reform Act of 1984 (SRA). Specifically, the petitioner received a 60-month sentence for violating 18 U.S.C. §§ 371 & 152, Conspiracy to Commit Bank and Securities Fraud & Making a False Statement in a Bankruptcy Proceeding, which was ordered to run concurrent with the 108-month sentence imposed for violating 18 U.S.C. § 1956, Money Laundering. These sentences have been aggregated and converted to a total term in effect of 9 years. ( **Declaration of Mary Anne Lawrence, Assistant Inmate System Manager, FCI Miami)**.

The aggregated sentence has been computed as commencing on June 30, 1997, the date the Petitioner voluntarily surrendered to the custody of the Bureau of Prisons. The petitioner has been awarded one (1) day of prior custody credit for June 1, 1995, which is the date of arrest; and has thus far earned 378 days of good conduct time toward completion of his sentence. The awards were made within 15 days after the end of the first year of incarceration, specifically on

5

July 13th of ever year, between June 29, 1997, through June 28, 2004.[1]  **(Exhibit C, Sentence**

**Monitoring Good Conduct Data for Petitioner)**.

II. Regulations and Program Statements

The Bureau's regulation implementing the award of GCT pursuant to 18 U.S.C.

§ 3624(b) is codified at Title 28 C.F.R. § 523.20.  The initial step in analyzing an award of GCT

must be to determine the date of offense.  In accord with 18 U.S.C. § 3624(b), if the offense

occurred on or after November 1, 1987, an inmate may earn up to 54 days of credit toward

service of sentence for each year served.[2]  Congress authorized rewarding inmates who

demonstrate good behavior when it passed the Sentencing Reform Act of 1984.  Pub. L. 98-473,

title II, Sec. 212(a)(2) (October 12, 1984).  The original text of the law provided an inmate would

receive up to 54 days of credit toward his sentence "at the end of each year of his term of

imprisonment, beginning after the first year of the term."  Congressional intent was further

clarified when the word "after" was replaced by the words "at the end of."  Criminal Law and

Procedure Technical Amendments Act of 1986, Pub. L. 98-646, §16, 100 Stat. 3592, §§ 16-17.

The good conduct time provision of the Sentencing Reform Act of 1984 (SRA), as

amended, became effective on November 1, 1987, and applies to offenses that occurred on or

---

[1]   For the limited purpose of computing GCT, the Bureau considers time awarded as prior custody credit in its calculation.  In this case, though the inmate was sentenced on February 28, 1997, the Bureau did not began the GCT computation until June 29, 1997.  This date represents the Bureau's calculation of the date the inmate self-surrendered to Bureau custody (June 30, 1997) and credits the inmate with the one (1) day of jail credit (June 1, 1995, date of arrest) by adjusting the date for which computation of GCT to be awarded will begin.  Therefore, he was eligible to receive GCTand did in fact receive up to 54 days of GCT each year, commencing on June 29, 1997, through the present.

[2]   Subsequent amendments limit the award to a maximum of 42 days if the inmate fails to meet the educational requirements.

after November 1, 1987, but before April 26, 1996.   Since Petitioner's date of offense on his

sentences were June 26, 1992, and May 18, 1993, these sentences were imposed under the SRA,

and therefore, subject to aggregation.[3]  These sentences form a <u>single</u> sentence for computation

purposes in accordance with Title 18 U.S.C. § 3584(c).

Section 3624(b) provides that a prisoner serving a term of imprisonment of more than one

year, other than a term of life, is eligible to receive up to 54 days GCT credit "at the end of" each

year of imprisonment, provided the prisoner satisfactorily complies with institutional disciplinary

regulations.   For those prisoners who maintain a clear conduct record, such credit is

automatically given by the Bureau.   **(Ex. D, Federal Bureau of Prisons Program Statement**

**5580.28, <u>Sentence Computation Manual (CCCA of 1984)</u> at 1-40, 1-41)**.   Though current law

does not authorize credit to vest until the inmate's release, the version of § 3624 applicable to

petitioner authorizes credit to vest at the time it is received, and once vested, could not later be

withdrawn.  <u>Id.</u>  The version of section 3624(b), in effect on the date of Petitioner's offense,

states:

**(b) Credit toward service of sentence for satisfactory behavior.--**

A prisoner who is serving a term of imprisonment of more than one year, other
than a term of imprisonment for the duration of his life, shall receive credit toward
the service of his sentence, beyond the time served, of fifty-four days at the end of
each year of his term of imprisonment, beginning at the end of the first year of the
term, unless the Bureau of Prisons determines that, during that year, he has not
satisfactorily complied with such institutional disciplinary regulations as have
been approved by the Attorney General and issued to the prisoner.  If the Bureau

---

[3] The word aggregate as define by the Merriam-Webster's Collegiate Dictionary, Tenth Edition,
means: formed by the collection of units or particles into a body, mass, or amount; the whole sum or
amount.

determines that during that year, the prisoner has not satisfactorily complied with such institutional regulations, he shall receive no such credit toward service of his sentence or shall receive such lesser credit as the Bureau determines to be appropriate.  The Bureau's determination shall be made within fifteen days after the end of each year of the sentence.  Such credit toward service of sentence vests at the time it is received.  Credit that has been vested may not later be withdrawn, and credit that has not been earned may not later be granted.  Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

Sentencing Reform Act of 1984, Pub. L. 98-473, title II, Sec. 212(a)(2) (1984); as amended by

Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 98-646, §16, 100 Stat.

3592, §§ 16-17.

There have been subsequent amendments to the statutory provisions of

§ 3624(b) as discussed infra.  However, the statutory language incorporating only the initial

amendment to the SRA version, as cited above, is applicable to the Bureau's award of GCT to

Petitioner, since Petitioner's date of offense was June 26, 1992, and May 18, 1993.

## LEGAL ANALYSIS

I.  Authority to Award Jail Time Credit Rests with the Attorney General

The Attorney General, through the Bureau of Prisons, is responsible for computing a

prisoner's sentence, and applying and administering GCT pursuant to 18 U.S.C. § 3624.  See

United States v. Wilson, 503 U.S. 329 (1992)[4];  Gonzalez v. United States, 959 F.2d 211, 212

(11th Cir. 1992) (Bureau of Prisons is responsible for computing a sentence).  Even before, the

Eleventh Circuit Court of Appeals held the power to grant jail time credit lies exclusively with

---

[4]  While Wilson specifically dealt with sentence computation decisions made under 18 U.S.C. § 3585, the same principle applies to the awarding of GCT, because the amount of GCT time an inmate is eligible to receive is considered when Bureau staff compute that inmate's federal sentence.

the Attorney General.  See United States v. Lucas, 898 F.2d 1554 (11th Cir. 1990)(per curiam).

When statutes charge agencies with the responsibility of administering a statutory scheme, the agencies' reasonable interpretations of the statute they are applying is entitled to deference.  See Howe v. Smith, 452 U.S. 473, 485 (1981).  Although not determinative, the construction of a statute by those charged with its administration is entitled to great deference, particularly when that interpretation has been followed consistently over a long period of time.  U. S. v. Clark, 454 U.S. 555, 565 (1982).  The Supreme Court in Chevron U.S.A. Inc. v. Natural Defense Resources Council, Inc., 467 U.S. 837 (1984), set forth the analysis for judicial review of agency decisions applicable here.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue,  the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. at 842-43.

Moreover, the reviewing court need not "conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."  Id. at 843, n. 11.  The courts must accord "considerable weight . . . to an executive department's construction of a statutory scheme it is entrusted to administer . . ."  Id. at 844.

9

This principle of deference "has been consistently followed . . . whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations." Id. at 845 (quoting United States v. Shimer, 467 U.S. 374, 382, 383 (1961)(citations omitted). In Cook v. Wiley, the Eleventh Circuit acknowledged the Supreme Court's determination that a Bureau Program Statement is entitled to some deference "[so long as] it is a permissible construction of the statute." Cook v. Wiley, 208 F3d. 1314, 1319 (11th Cir. 2000) (citing Reno v. Koray, 515 U.S. 50, 61 (1995)). In Pacheco-Camacho v. Hood, the Ninth Circuit held the Bureau's regulation in question, 28 C.F.R. 523.20, is entitled to the full deference mandated by Chevron. Pacheco-Camacho v. Hood, 272 F.3d 1266 at 1268 (9th Cir. 2001) (decided after Christensen v. Harris County, 529 U.S. 576 (2000)).

At issue is whether the Bureau exceeded its statutory authority in the implementation of Title 18 U.S.C. § 3624 (b) and the calculation of GCT credits. The Bureau has created a formula in which each prisoner may earn up to 54 days GCT for each full year served on a sentence. The Petitioner argues the interpretation of the concept "term of imprisonment" compels the court to conclude Congress intended for the application of GCT to be based on the length of the sentence imposed, as opposed to being credited incrementally after each year of time actually served. The statute clearly states in part,

> A prisoner who is serving a term of imprisonment of more than one year, other than a term of imprisonment for the duration of his life, shall receive credit toward the service of his sentence, beyond the time served, of fifty-four days **at the end of each year** of his term of imprisonment, **beginning at the end of the first year of the term,** unless the Bureau of Prisons determines that, during that year, he has

>not satisfactorily complied with such institutional disciplinary regulations as have
>been approved by the Attorney General and issued to the prisoner.

Sentencing Reform Act of 1984, Pub. L. 98-473, title II, Sec. 212(a)(2) (1984); as amended by

Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 98-646, §16, 100 Stat.

3592, §§ 16-17.

The good conduct time statute clearly contemplates the award of 54 days of credit only "at the
end of each year" in service of the sentence. Sentencing Reform Act of 1984, Pub. L. 98-473, title II,

Sec. 212(a)(2) (1984); as amended by Criminal Law and Procedure Technical Amendments Act of

1986, Pub. L. 98-646, §16, 100 Stat. 3592, §§ 16-17. This is significant language as Congress had

originally indicated the award of credit would be "after" the first year. Sentencing Reform Act of

1984, Pub. L. 98-473, Title II, Sec. 212(a)(2) (1984). What other words could Congress have been

required to use to express its intent to have the Bureau award the amount of good time credit earned 'at

the end of each year'? Contrary to Petitioner's argument of entitlement, the statute clearly charges the

Bureau with the authority to vest these credits only after the inmate has satisfactorily complied with

institutional disciplinary regulations. 18 U.S.C. § 3624(b). The explicit provision of authority which

Congress delegated to the Bureau clearly evidences Congressional intent for the inmate to comply with

the prison rules before being awarded the credit. Id. Under the framework proposed by the Petitioner,

inmates would receive good conduct time credit for time they were not serving a sentence (that is, the

Petitioner wants the 54 days awarded prior to service of a full year of incarceration). Such a

construction of the statute would render moot the discretion afforded the Bureau to not award credit

when an inmate's behavior is not satisfactory.

11

Like here, the petitioner in <u>Pacheco-Camacho v. Hood</u> claimed the Bureau had improperly denied him his GCT due to the Bureau's interpretation of the phrase "term of imprisonment." <u>Pacheco-Camacho v. Hood</u>, 272 F.3d 1266 (9th Cir. 2001).  <u>Pacheco</u> alleged the phrase must refer to a sentence imposed in the judgment, as opposed to the time actually served.  <u>Id.</u>  The <u>Pacheco</u> court disagreed, holding this interpretation was inconsistent with the statute.  <u>Id.</u> at 1268.  The Bureau regulation adopting a scheme whereby an inmate is credited with 54 days of good conduct time at the end of each year of imprisonment provided he has not lost any time due to disciplinary infractions falls within the implied statutory authority of the Bureau.  <u>Id.</u> at 1270.  Other circuits have agreed the federal good time statute, 18 U.S.C. § 3624, is clear as to the delegation to the Bureau to determine a federal prisoner's GCT credit, and not the courts.  <u>Gonzalez v. United States</u>, 959 F.2d 211, 212 (11th Cir. 1992) (citing <u>United States v. Martinez</u>, 837 F.2d 861, 865-66 (9th Cir. 1988)); <u>United States v. Evans</u>, 1 F.3d 654, 654 (7th Cir. 1993).  <u>See also</u> <u>Ramos v. Gonzalez</u>, No. 03-22377-CIV-SEITZ (S.D. Fla.) report of Magistrate Judge at 2 (recommending denial of the Petition finding Bureau's calculation reasonable).

The calculation of sentences, which includes application of GCT, is an "administrative" matter within the authority of the Bureau.  <u>Id.</u>  Since the Bureau is charged with responsibility for administering sentences, it is reasonable to conclude Congress entrusted the Bureau with the discretion to calculate a sentence.

II.   <u>§ 3624 (b) Authorizes Credit Toward Service of Sentence for Satisfactory Behavior</u>

Under Petitioner's theory for awarding good conduct time, he would seek to have the Bureau apply the credit based on the sentence imposed rather than the sentence served.  This interpretation

12

belies the very essence of the statute, which is to provide an incentive for inmates to comply with prison rules and regulations as well the plain language requiring award of the credit after service of each year of the term of imprisonment.  Up to 54 days of good conduct credit may be awarded "at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term," provided the "prisoner has displayed exemplary compliance with institutional regulations."  18 U.S.C. § 3624 (b).  For those individuals sentenced prior to enactment of the Prison Litigation Reform Act, the Bureau has 15 days from the end of each year of imprisonment to award the good conduct time which, the Petitioner's case, vests immediately.  Once vested, it cannot be taken away.  A review of the Sentence Monitoring Good Time Data reveals Petitioner has already been awarded and vested 378 days of good conduct time.  **See Exhibit C.**

III.  Consistent With the Supreme Court's Mandate, the Bureau's Interpretation of § 3624(b) Should Be Considered to Be Correct Since it Has Been Expressly Adopted by the Many Years of Implementation

Through this pleading, the Petitioner attempts to draw the court's attention to the decision held in White v. Scibana, 314 F. Supp. 2d 834 (W.D. Wis. 2004) (accepted for hearing on expedited appeal before 7th Circuit).  The court in Scibana held Congress' intention was unambiguously expressed in the statute and the Bureau is compelled to compute good conduct time based on the sentence imposed rather than time served.  The interpretation and application of the statute under Scibana, however, is inconsistent with years of interpretation and calculation of good time by the Bureau.  The language in a statute must be read in conjunction with the entire statutory scheme.  The Eleventh Circuit in Harris v. Garner, recognized the starting point for all statutory interpretation is consideration of the language of the statute itself.  Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) (en banc).  Recently, the Eleventh

13

Circuit articulated the appropriate method for analyzing issues arising from issues of statutory interpretation.

> In *Robinson v. Shell Oil*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), the Supreme Court articulated a two-step analysis to be followed by courts facing questions of statutory interpretation [which is equally applicable in this circumstance]. First, **courts must look to "the [statutory] language itself, the specific context in which that language is used, and the broader context of the statute as a whole" to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."** *Id.* at 340, 117 S.Ct. 843. If the language is "unambiguous" and "the statutory scheme is coherent and consistent," the inquiry ends there. *Id.* (quoting *United States v. Ron Pair Enter. Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). **If an ambiguity is identified, however, courts must look to "[t]he broader context provided by other sections of the statute"** to resolve it. *Robinson,* 519 U.S. at 345, 117 S.Ct. 843. As the *Robinson* Court demonstrated, this step requires courts to (1) identify the broader goals of the statute as a whole, (2) determine how the proposed alternative readings of the statute would comport with those goals, and (3) resolve the case in favor of the reading that best helps to realize the goals of the statute.

E.E.O.C. v. Total System Services, Inc., 240 F.3d 899, 900 (11th Cir. 2001).

It is not enough to say "term of imprisonment" means sentence imposed and require the Bureau of Prisons to change it's methodology without considering the feasibility of this interpretation in light of the rest of the statute. The statute simply cannot be read to require the award of GCT in the manner suggested by the Petitioner due to the statutory mandate the award be made annually and that the award not exceed 54 days. It is not possible to comply with the statute's maxims if the court requires the Bureau to reward the inmate for satisfactory behavior based upon the length of the sentence imposed rather than the time spent actually behaving satisfactorily while in custody.[5]

_____

[5] The reason for this is simple. If, for example, the court finds an inmate serving ten years must receive 540 days (54 x 10 = 540) of good conduct time, that time still needs to be awarded with mandates of the statute. Under the theory proposed in the Scibana case, an inmate sentenced to 10 years (3650 plus 2 days for 2 leap years = 3652 days) imprisonment, should expect to serve 3112 days (3652 - 540 = 3112) or roughly 8.5 years. Thus, if the Bureau complies with the mandate to award up to 54 days

14

The Bureau is only given statutory authority to award up to 54 days toward completion of an inmate's sentence and this award may only be made annually. These statutory mandates are undisputed and clear. Even if the Bureau were to calculate a "year" by taking the number of days awarded for good conduct the preceding year and adding to that the number of days necessary to equal 365 days, there is still insufficient time; that is, there are not enough annual periods to make awards totaling 540 days if a 10 year sentenced was imposed. As indicated above, under Scibana, the court would have an inmate eligible to earn 540 days for satisfactory behavior. One method of calculation which has been proposed is to have the inmate serve a complete year (365 days) before being eligible for the initial award of credit of up to 54 days, then each subsequent year the inmate is eligible to earn up to 54 days.[6] This proposed methodology falls short of the anticipated 540 days of good conduct time contemplated under the theory adopted in Scibana. Again, the Bureau would have to violate the statutory mandate to award the credit annually, or violate the statutory mandate to award no more than 54 days at the end of each year. The only way the Bureau could effectuate the court's requirement the inmate be eligible to receive up to 540 days of good conduct time on an imposed sentence of 10 years

---

annually, at most, the petitioner would be eligible to earn 8 awards (due to 8 years in custody) of 54 days (432), and one prorated award for a partial year (54/2 = 26 days). Thus, the petitioner could only be awarded roughly 458 days. In order to award the 540 days, the Bureau would have to either award more days than authorized by the statute or make the award more often than authorized by statute.

[6] The subsequent awards would not be made on a calendar anniversary date as is currently utilized by the Bureau, but instead would require the Bureau to calculate the "end of each year" by taking the amount of good time awarded for satisfactory behavior the preceding year and calculating the number of days that would have to be served to result in satisfaction of an actual year of the sentence. So, if after the first year the inmate was awarded 54 days of good conduct time, he would only have to serve 311 days to be considered for the second annual award of good time. Assuming the inmate sentenced to a 10-year-term maintained good conduct throughout his incarceration resulting in annual awards of 54 days, his sentence would be satisfied by his actually serving 3166 days and earning 486 days of good conduct time (3166 + 486 = 3652).

15

would be to award additional good conduct credit each year or to award credit more than annually (regardless of how you calculate completion of a year). And in doing so, the Bureau would be inconsistent with the clear mandate of the statute.

Statutory construction cannot take place in a vacuum. "Congress entrusts to the [Director], rather than the courts, the primary responsibility for interpreting the statutory term. In exercising that responsibility, the [Director] adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner." Batterton v. Francis, 432 U.S. 416, 425 (1977) (relying on American Telephone & Telegraph Co. v. United States, 299 U.S. 232, 235-237 (1936). The Supreme Court in Batterson went on to say "[v]arying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." Id. at 425.

The facts of this case are particularly illustrative of the inapplicability of adopting a mechanism for awarding credit under 18 U.S.C. § 3624(b). Here, the Petitioner is serving two concurrent sentences of 60 months and 108 months. Under the theory proposed which would award good conduct time based upon the sentences imposed, then he should receive up to 54 days toward each sentence which was imposed. This would require the Bureau to administratively calculate the sentences separately rather than as provided by Congress. As part of the SRA, Congress adopted provisions for addressing multiple terms of imprisonment, which is codified as 18 U.S.C. § 3584(c). Pub. L. 98-473, Title II, § 212(a) (1984). This provision states in pertinent part: "Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c). This section of the SRA seems to contravene

16

the court's finding in <u>White v. Scibana</u>, *supra*, that Congress' "unambiguous intent [through the SRA] was to define the phrase 'term of imprisonment' to mean 'sentence imposed'." If the meaning subscribed to the phrase 'term of imprisonment' is as that court suggests is applied to the provision of the SRA codified at 18 U.S.C. § 3584(a), it would seem to authorize an administrative conversion of multiple terms of imprisonment to imposition of a single sentence which is contrary to established criminal and judicial procedures. Cf. 18 U.S.C. § 3553 ("court shall impose a sentence"); Fed. R. Crim. Pro, Rule 11 (Judge is sole sentencing authority and can reject plea agreements). A more consistent interpretation of these statutes would suggest Congress recognized the utility in administering multiple terms of imprisonment as one whenever possible. 18 U.S.C. § 3584(c). As such, the execution or administration of the sentence relates not to the sentence(s) as imposed, but instead to the sentence as it is to be served. Thus, rather than having to independently calculate a possible award of up to 54 days in GCT against the Petitioner's 60-month and 108-month sentences as imposed,[7] he is eligible to earn up to 54 days a year as to the single, aggregate sentence the inmate is serving and which the Bureau has calculated. **(Ex. A).**

When, like here, a regulatory scheme has been developed to further the implementation of a statute and that statute has been subsequently amended by Congress on several occasions, any "[s]ubsequent legislation declaring the intent of an earlier statute is entitled to great weight of statutory

---

[7]   Under the proposed method for calculating GCT, the Petitioner apparently alleges he should be eligible to earn up to 756 days of good conduct time if computed based upon the sentence imposed ([5 years (60 mos) x 54 = 270] **plus** [9 years (108 mos.) x 54= 486 days] = 756). Despite having to separately administer the sentences, under the proposed method as applied to the facts in this case, the Petitioner would still only actually yield a reduction of no more than 486 days because his sentences were entered on the same date.

17

construction." <u>Red Lion Broadcasting Co., Inc. v. FCC</u>, 395 U.S. 367, 380-381 (1969).  Even more significant is the Supreme Court's recognition that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction." <u>Id.</u> at 381 (footnote omitted).[8]  In that case, the Court provided a clear example of the different circumstances in which such deference is appropriate and concluded that where there have been 30 years of consistent administrative interpretation, coupled with a subsequent statutory amendment which did not interfere with the interpretation, the agency interpretation could be presumed to be correct.  <u>Id.</u> at 382.  Therefore, when a particular interpretation has been followed over a long period of time, great deference should be afforded to the construction of the statute by those charged with its administration.  <u>U. S. v. Clark</u>, 454 U.S. 555, 565 (1982).

Since it's enactment in 1984, the provision codified in Title 18 U.S.C. § 3624 addressing the provision of "Credit toward service of sentence for satisfactory behavior" have undergone several revisions.  None of these revisions adopted a formula basing the amount of credit an inmate is eligible to earn based on the length of the sentence imposed; none required a determination or award at the beginning of the sentence of the amount of credit which an inmate may be eligible to earn; and no revision has called for inmates to only serve 85% of the sentence imposed.  Quite the contrary, GCT was intended to serve as a vehicle for rewarding inmates exhibiting appropriate behavior while incarcerated and since its inception, Congress has restricted and expanded the eligibility criteria to earn

_____

[8]  Here, as in <u>Red Lion Broadcasting Co., Inc.</u>, "Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation. **Id.** at 381-382.

18

such credit.  **(Ex. E.. <u>cf.</u> Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322 §20405 (4)(B), 108 Stat 1796 (Sept. 13,1994) (limiting award of good time to inmates "serving a term of imprisonment of more than 1 year for a crime of violence")), with (Ex. F, Omnibus Consolidated Rescissions and Appropriations Act of 1996, P.L. 104-134, 110 Stat 1321 § 809(C)(1)(B)(ii), 1996 HR 3019 (Apr. 26, 1996) (striking eligibility requirement the inmate be serving a sentence "for a crime of violence")).**

Congress first amended the provisions of 18 U.S.C. § 3624 in 1986.  Though these changes were minor, they clearly evidence Congressional intent to allow inmates to earn such credit while incarcerated.  Criminal Law and Procedure Technical Amendments Act of 1986, 1986 U.S.C.C.A.N. 6138, H.R. Rep. No. 99-797  (August 15, 1986) at *16 & 21.  Specifically, Congress explained the basis for changing the terms authorizing the Bureau to award credit "at the end of" rather than "after" the first year to "clarify that the good time credit can be earned for the first year of a term of imprisonment." <u>Id.</u> at § 14, *21.  Once again Congress made minor changes, this time replacing masculine pronouns with gender neutral nouns.  P.L. 103-322, 1994 H.R. 3355, section 20405, *31-33, (Sept. 13, 1994).  Despite Congressional scrutiny of this provision, the Bureau's method of awarding good conduct time based upon time served was not disturbed.

Once again in 1996, Congress scrutinized the award of credit for satisfactory behavior while in prison.  Rather than limit the Bureau's discretion or modify the method employed by the Bureau for awarding such credit, Congress extended the time for this credit to vest until the date of the inmate's release and granted the Bureau even greater discretion by requiring the Bureau to consider an inmates progress toward attaining a high school diploma or GED.  Moreover, Congress recognized the

19

Bureau's decision to only grant credit to inmates for time spent actually serving their sentence as is evidenced by the 1996 appropriations legislation in which Congress authorized "Truth-in-Sentencing Incentive Grants" to states demonstrating in part that persons convicted of violent crimes "serve not less that 85 percent of the maximum prison term allowed under the sentence imposed by the court *(not counting time not actually served* such as administrative or statutory incentives for good behavior). **(Ex. F. P.L. 104-134, 110 Stat 1321 §20104(a)(3)(B), 1996, HR 3019 (Apr. 26, 1996)).** While not requiring states to adopt fully the Bureau's implementation of the award of such credits, Congress itself acknowledged the significance of only awarding such credit for time spent actually serving a sentence and encouraged them to follow this example through making it a condition of eligibility for such grants. Id. at P.L. 104-134 (codified at 42 U.S.C.A. § 13703).

"The one circumstance in which a court may properly look beyond the plain language of a statute is where giving effect to the language used by Congress would lead to a truly absurd result." Glazner v. Glazner, 347 F.3d 1212, 1215 (11th Cir. 2003) (en banc). Assuming arguendo that a difficult question has been presented with regard to the statutory interpretation of § 3624(b), the legislative history with its several amendments support the Bureau's interpretation and implementation of the statute. Interpreting the statutory language to award good conduct credit toward completion of a sentence based upon the sentence length imposed rather than based upon the time spent displaying good conduct would seem to lead to an inconsistent or absurd result. The Bureau's interpretation and implementation of § 3624(b) through Program Statement 5528.28, Sentence Computation Manual (CCCA of 1984), has remained virtually unchanged. Though in 1996 Congress required the Bureau to also take into consideration educational attainment when awarding credit under this statute, the

20

fundamental premise that the award be made based upon conduct/actions while in custody the preceding year remains unchanged.

IV.   The Bureau Awarded the Petitioner With the 54 days of Good Conduct Time Credits; Therefore, His Claim is Moot

The Bureau has conducted a review of Petitioner's GCT and found it to be properly computed in accordance with Bureau policy and federal statutes.  He has been considered for and awarded 54 days of GCT credit at the end of each year he has been in custody.  (**See Declaration of Mary Anne Lawrence**).  Additionally, Bureau policies require he be considered annually for additional awards of up to 54 days as well a prorated amount for any portion of a year served.

The Petitioner's claim for 54 days of GCT is moot as he has already been awarded the credit due him by the Bureau.  See e.g. O'Neal v. United States, 399 F.2d 635 (5th Cir. 1968).[9]  Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of live "Cases" and "Controversies." U.S. Const. Art. III, § 2; Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969); Al Najjar v. Ashcroft, 273 F.3d 1330, 1335 (11th Cir. 2001).

> The "case or controversy" constraint imposes a "dual limitation" known as "justiciability" on federal courts. Id. (quoting United States v. Fla. Azalea Specialists, 19 F.3d 620, 621 (11th Cir.1994)). "The doctrine of justiciability prevents courts from encroaching on the powers of the elected branches of government and guarantees that courts consider only matters presented in an actual adversarial context." Id. (citing Socialist Workers Party v. Leahy, 145 F.3d 1240, 1244 (11th Cir.1998) ("Because the judiciary is unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in the justiciability doctrine, presents an important restriction on the power of the federal courts.").

---

[9]  Decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit per Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

De La Teja v. United States, 321 F.3d 1357, 1361 (11th Cir. 2003).

The question of mootness is jurisdictional and compels dismissal when there is no live case or controversy for which the court can grant relief. Id.; see also North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). The petition is moot to the extent Petitioner seeks to be considered for an award of 54 days of GCT annually for the time he has been incarcerated, as the Bureau has already awarded the credit towards his present sentence. **Exhibit C**.

V.    Rule of Lenity

Petitioner asserts the Bureau is not entitled to deference because the rule of lenity must be applied when construing an ambiguous penal statute. "[T]he rule of lenity applies only where there is an ambiguity in the statute; it cannot be employed to override clear statutory language." Glazner v. Glazner, 330 F.3d 1298, 1304 (11th Cir. 2002) vacated in part on other grounds, 347 F.3d 1212 (11th Cir. 2003). When determining the applicability of the rule of lenity, the court "must consider not just language of sentencing regime, but also its 'structure, legislative history and motivating policies. . . .' " United States v. Sloan, 97 F.3d 1378, 1382 (11th Cir. 1996), cert. denied, (citing Bifulco v. United States, 447 U.S. 381 (1980)). The rule serves as an aid for resolving an ambiguity, not as a command to "override common sense and evident statutory purpose." U.S. v. Trout, 68 F.3d 1276, 1280 (11th Cir. 1995), cert. denied, (citing U.S. v. Brame, 997 F.2d 1426, 1428 (11th Cir. 1993)).

The rule does not, however, prevent an agency from resolving statutory ambiguity through valid regulation. Any ambiguity that may exist in section 3624, the Bureau has resolved through reasonable interpretation, and the rule of lenity does not apply. Pacheco-Camacho v. Hood, 272 F.3d 1266, 1271

(9th Cir. 2001), cert. denied.  The rule is not a doctrine of first resort whenever a potential ambiguity in a statute is identified by a defendant, and the rule "is not invoke[d] by a grammatical possibility." U.S. v. Maldonado-Ramirez, 216 F.3d 940, 943 (11th Cir. 2000), cert. denied, (citing Caron v. United States, 524 U.S. 308, 316 (1998).  It applies only when "the traditional canons of statutory construction" fail to resolve the ambiguity.  Id. at 943 (citing United States v. Shabani, 513 U.S. 10, 17 (1994)).  Therefore, the rule of lenity is inapplicable in this circumstance.

VI.  Petitioner Fails to State a Constitutional Claim

Petitioner contends that failure to award him the credit he seeks violates his rights under the Due Process clause of the Fifth Amendment of the Constitution.  The Due Process clause itself does not guarantee GCT credits for satisfactory behavior while in prison. U.S.C.A. Const. Amend. 14. See also, Wolff v. McDonnell, 418 U.S. 539 (1974).   Nor, as Petitioner intimates, does 18 U.S.C. § 3624(b) contain mandatory language which bestows a liberty interest in an award of credit, as under the statue, the award of credit is left to the discretion of the Bureau.  As a result of Sandin v. Connor, 515 U.S. 472 (1995), courts no longer scrutinize the language of the statute or regulation in search of "mandatory" language which dilutes official discretion; instead, Sandin teaches a prisoner's liberty interest which requires due process procedures prior to infringement by government officials is created only if the government activity "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.  The computation of a prisoner's sentence and application of GCT credits are administrative matters within the discretion of the Bureau. See generally,  U. S. v. Wilson, 503 U.S. 329 (1992); and  U.S. v. Hedges, 458 F.2d 188 (10th Cir. 1972).  The Bureau's

23

exercise of its discretion in these matters imposes neither an atypical nor significant hardship in relation to the ordinary incidents of prison life.

So far, Petitioner has received 54 days of GCT for each year served from December 20, 1990, through December 19, 2003. Petitioner may earn for each full year served in excess of one year 54 days of GCT, with the GCT being prorated for the last partial year.

## CONCLUSION

Petitioner's GCT and prior custody credits have been properly computed in accordance with Bureau policies and federal statutes, and he has received all the GCT time due him. Under 18 U.S.C. § 3624(b), to be eligible for up to 54 days of GCT, a prisoner must: (1) be serving a term of imprisonment of more than a year, other than a life sentence; and (2) actually comply with discipline regulations while serving an entire year of the term of imprisonment before being credited with the time. The regulations promulgated by the Bureau are within its authority and are reasonably interpreted and construed consistent with Title 18 U.S.C. § 3624(b) and Title 18 U.S.C. § 3585(b).

Wherefore, based on the analysis contained herein, it is requested the petition be denied on the grounds that Petitioner is not entitled to any additional GCT credit or prior custody credit, and/or dismissed for failure to state a constitutional claim as the regulation promulgated by the Bureau is a reasonable implementation of the statute.

Respectfully Submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By:     STEVEN R. PETRI
        Assistant United States Attorney
        Federal Bar No.  A550048
        U. S. Attorney's Office
        500 E. Broward Blvd., Suite 700
        Ft. Lauderdale, FL 33394
        Tel: 954-356-7314 ext. 3599
        Fax: 954-356-7180

## LIST OF EXHIBITS

A.    SENTRY Public Information Data

B.    SENTRY Administrative Remedy Data

C.    SENTRY Good Conduct Time Data

D.    Program Statement 5580.28, *Sentence Computation Manual (CCCA of 1984)*, at 1-40, 1-

41.

E.    Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322 § 20405

(4)(B), 108 Stat 1796 (Sept. 13,1994)

F.    Omnibus Consolidated Rescissions and Appropriations Act of 1996, P.L. 104-134, 110

Stat 1321 § 809(C)(1)(B)(ii), 1996 HR 3019 (Apr. 26, 1996)

26

## CERTIFICATE OF SERVICE

I hereby certify that on this _20th_ of August, 2004, a true and correct copy of the foregoing

was mailed postage prepaid to:

Mitchell Hammer
Reg. No. 48828-004
Federal Prison Camp
P.O. Box 779800
Miami, Florida 33177

STEVEN R. PETRI
Assistant United States Attorney

```
     TALSH          *         PUBLIC INFORMATION          *      08-06-2004
   PAGE 001         *            INMATE DATA              *      11:46:31
                              AS OF 08-06-2004

   REGNO..: 48828-004 NAME: HAMMER, MITCHELL

                      RESP OF: MIA / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 305-259-2100     FTS: 305-259-2160
                                                RACE/SEX...: WHITE / MALE
   FBI NUMBER.: 764286EB4                       DOB/AGE....: 06-19-1952 / 52
   PROJ REL MT: GOOD CONDUCT TIME RELEASE       PAR ELIG DT: N/A
   PROJ REL DT: 05-01-2005                      PAR HEAR DT:
   ------------------------------ ADMIT/RELEASE HISTORY ------------------------------
   FCL  ASSIGNMENT DESCRIPTION                   START DATE/TIME STOP  DATE/TIME
   MIA  A-DES      DESIGNATED, AT ASSIGNED FACIL 05-16-2004 2219 CURRENT
   MIA  FURL TIES  FURLOUGH-FAMILY TIES          05-12-2004 0847 05-16-2004 2219
   MIA  A-DES      DESIGNATED, AT ASSIGNED FACIL 01-02-2004 2249 05-12-2004 0847
   MIA  FURL TIES  FURLOUGH-FAMILY TIES          12-31-2003 0817 01-02-2004 2249
   MIA  A-DES      DESIGNATED, AT ASSIGNED FACIL 07-02-2003 2247 12-31-2003 0817
   MIA  FURL TIES  FURLOUGH-FAMILY TIES          07-02-2003 0844 07-02-2003 2247
   MIA  A-DES      DESIGNATED, AT ASSIGNED FACIL 01-13-2003 1042 07-02-2003 0844
   MIA  LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN 01-13-2003 0701 01-13-2003 1042
   MIA  A-DES      DESIGNATED, AT ASSIGNED FACIL 04-26-2000 1522 01-13-2003 0701
   MIA  LOCAL HOSP ESC TRIP TO LOCAL HOSP W/RETN 04-25-2000 1346 04-26-2000 1522
   MIA  A-DES      DESIGNATED, AT ASSIGNED FACIL 06-19-1998 2301 04-25-2000 1346
   MIA  FURL MED E FURLOUGH-MEDICAL EMERGENCY    06-19-1998 0636 06-19-1998 2301
   MIA  A-DES      DESIGNATED, AT ASSIGNED FACIL 06-30-1997 1033 06-19-1998 0636
   6-U  RELEASE    RELEASED FROM IN-TRANSIT FACL 06-30-1997 1033 06-30-1997 1033
   6-U  A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 04-02-1997 1156 06-30-1997 1033
   CMM  ADMIN REL  ADMINISTRATIVE RELEASE        04-02-1997 1156 04-02-1997 1156
   CMM  A-ADMIN    ADMINISTRATIVE ADMISSION      04-02-1997 1154 04-02-1997 1156
```

G0002      MORE PAGES TO FOLLOW . . .

**Government Exhibit**
**A**

```
TALSH          *      PUBLIC INFORMATION        *      08-06-2004
PAGE 002       *          INMATE DATA           *      11:46:31
                      AS OF 08-06-2004
```

REGNO..: 48828-004 NAME: HAMMER, MITCHELL

```
                RESP OF: MIA / DESIGNATED, AT ASSIGNED FACIL
                PHONE..: 305-259-2100     FTS: 305-259-2160
PRE-RELEASE PREPARATION DATE: 11-01-2004
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE: 05-01-2005 VIA GCT REL

-----------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

```
COURT OF JURISDICTION...........: FLORIDA, SOUTHERN DISTRICT
DOCKET NUMBER...................: 95-367-CR-FERGUSON
JUDGE...........................: FERGUSON
DATE SENTENCED/PROBATION IMPOSED: 02-28-1997
DATE COMMITTED..................: 06-30-1997
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $150.00        $00.00          $00.00       $00.00
```

RESTITUTION...: PROPERTY: NO  SERVICES: NO      AMOUNT: $250,000.00

-----------------------CURRENT OBLIGATION NO: 010 -----------------------
OFFENSE CODE....: 153
OFF/CHG: CONSP TO COMMIT BANK & SECURITIES FRAUD;MAKING FALSE STATEMENT
        IN A BANKRUPTCY PROCEEDING. 18 USC 371 & 152 - CTS 1 & 83

```
 SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:     60 MONTHS
 TERM OF SUPERVISION............:      3 YEARS
 DATE OF OFFENSE................: 05-18-1993
```

-----------------------CURRENT OBLIGATION NO: 020 -----------------------
OFFENSE CODE....: 548
OFF/CHG: MONEY LAUNDERING - 18 USC 1956 - CT 71

```
 SENTENCE PROCEDURE.............: 3559 SRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:    108 MONTHS
 TERM OF SUPERVISION............:      3 YEARS
 DATE OF OFFENSE................: 06-26-1992
```

G0002      MORE PAGES TO FOLLOW . . .

```
TALSH            *        PUBLIC INFORMATION            *    08-06-2004
PAGE 003 OF 003 *           INMATE DATA                 *    11:46:31
                          AS OF 08-06-2004

REGNO..: 48828-004 NAME: HAMMER, MITCHELL

                   RESP OF: MIA / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 305-259-2100    FTS: 305-259-2160

-----------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 07-21-1997 AT MIA AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 010 020

DATE COMPUTATION BEGAN..........: 06-30-1997
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800
TOTAL TERM IN EFFECT............:   108 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     9 YEARS
AGGREGATED TERM OF SUPERVISION..:     3 YEARS
EARLIEST DATE OF OFFENSE........: 06-26-1992

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     06-01-1995     06-01-1995

TOTAL PRIOR CREDIT TIME.........: 1
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 423
TOTAL GCT EARNED................: 378
STATUTORY RELEASE DATE PROJECTED: 05-01-2005
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 06-28-2006


PROJECTED SATISFACTION DATE.....: 05-01-2005
PROJECTED SATISFACTION METHOD...: GCT REL




S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

```
     TALSH           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      08-06-2004
     PAGE 002 OF       *          FULL SCREEN FORMAT              *      11:48:04


     REGNO: 48828-004 NAME: HAMMER, MITCHELL
     RSP OF...: MIA UNT/LOC/DST: CAMP J              QTR.: J01-002L   RCV OFC: MIA
     REMEDY ID: 230924-F1       SUB1: 18AC SUB2:     DATE RCV:   01-17-2001
     UNT RCV..: CAMP J       QTR RCV.: J01-002L      FACL RCV: MIA
     UNT ORG..: CAMP J       QTR ORG.: J01-002L      FACL ORG: MIA
     EVT FACL.: MIA     ACC LEV: MIA  1              RESP DUE:  TUE  02-06-2001
     ABSTRACT.: REQUESTS ADDITION TO VISITING LIST.
     STATUS DT: 02-01-2001  STATUS CODE: CLD STATUS REASON: DNY
     INCRPTNO.:            RCT: P EXT:   DATE ENTD: 01-18-2001
     REMARKS..:




     REGNO: 48828-004 NAME: HAMMER, MITCHELL
     RSP OF...: MIA UNT/LOC/DST: CAMP J              QTR.: J01-002L   RCV OFC: MIA
     REMEDY ID: 270380-F1       SUB1: 35AM SUB2:     DATE RCV:   06-14-2002
     UNT RCV..: CAMP J       QTR RCV.: J01-002L      FACL RCV: MIA
     UNT ORG..: CAMP J       QTR ORG.: J01-002L      FACL ORG: MIA
     EVT FACL.: MIA     ACC LEV: MIA  1 SER  1 BOP  1  RESP DUE: THU  07-04-2002
     ABSTRACT.: REQUEST FOR MEDICAL TREATMENT
     STATUS DT: 07-08-2002  STATUS CODE: CLG STATUS REASON: PAR
     INCRPTNO.:            RCT: P EXT:   DATE ENTD: 06-14-2002
     REMARKS..:
```

```
     G0002        MORE PAGES TO FOLLOW . . .
```

**Government Exhibit**

**B**

```
TALSH          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      08-06-2004
PAGE 003 OF 003 *              FULL SCREEN FORMAT              *      11:48:04


REGNO: 48828-004 NAME: HAMMER, MITCHELL
RSP OF...: MIA UNT/LOC/DST: CAMP J            QTR.: J01-002L   RCV OFC: SER
REMEDY ID: 270380-R1       SUB1: 35AM SUB2:   DATE RCV:   08-05-2002
UNT RCV..: CAMP J          QTR RCV.: J01-002L  FACL RCV: MIA
UNT ORG..: CAMP J          QTR ORG.: J01-002L  FACL ORG: MIA
EVT FACL.: MIA      ACC LEV: MIA  1 SER  1 BOP  1  RESP DUE:  FRI  10-04-2002
ABSTRACT.: LIVER ENZYMES NOT CHECKED IN 5 YRS/BACK PAIN
STATUS DT: 10-15-2002  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 08-05-2002
REMARKS..:




REGNO: 48828-004 NAME: HAMMER, MITCHELL
RSP OF...: MIA UNT/LOC/DST: CAMP J            QTR.: J01-002L   RCV OFC: BOP
REMEDY ID: 270380-A1       SUB1: 26AM SUB2:   DATE RCV:   11-13-2002
UNT RCV..: CAMP J          QTR RCV.: J01-002L  FACL RCV: MIA
UNT ORG..: CAMP J          QTR ORG.: J01-002L  FACL ORG: MIA
EVT FACL.: MIA      ACC LEV: MIA  1 SER  1 BOP  1  RESP DUE:  SUN  01-12-2003
ABSTRACT.: LIVER ENZYMES NOT CHECKED IN 5 YRS/BACK PAIN
STATUS DT: 12-20-2002  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:              RCT: P EXT: P DATE ENTD: 11-13-2002
REMARKS..:
```

```
                    4 REMEDY SUBMISSION(S) SELECTED
G0000          TRANSACTION SUCCESSFULLY COMPLETED
```

```
  TALSH 542*22 *           SENTENCE MONITORING        *      08-06-2004
  PAGE 001 OF 001 *           GOOD TIME DATA           *      11:46:51
                          AS OF  08-06-2004

  REGNO...: 48828-004    NAME: HAMMER, MITCHELL
  ARS 1...: MIA A-DES                                  SRA
  COMPUTATION NUMBER..: 010              FUNC..: PRT   ACT DT:
  LAST UPDATED: DATE.: 07-21-1997        FACL..: MIA    CALC: AUTOMATIC
  UNIT................: CAMP J           QUARTERS............: J01-002L
  DATE COMP BEGINS....: 06-30-1997       COMP STATUS.........: COMPLETE
  TOTAL JAIL CREDIT...: 1                TOTAL INOP TIME.....: 0
  CURRENT REL DT......: 06-15-2005 WED   EXPIRES FULL TERM DT: 06-28-2006
  PROJ SATISFACT DT...: 05-01-2005 SUN   PROJ SATISF METHOD..: GCT REL
  ACTUAL SATISFACT DT.:                  ACTUAL SATISF METHOD:
  DAYS REMAINING......:                  FINAL PUBLC LAW DAYS:

---------------------------GOOD CONDUCT TIME AMOUNTS---------------------------

   START       STOP      MAX POSSIBLE TO      ACTUAL TOTALS    VESTED    VESTED
   DATE        DATE      DIS   FFT         DIS    FFT         AMOUNT     DATE
  06-29-1997  06-28-1998  54    0                              54    07-13-1998
  06-29-1998  06-28-1999  54    0                              54    07-13-1999
  06-29-1999  06-28-2000  54    0                              54    07-13-2000
  06-29-2000  06-28-2001  54    0                              54    07-13-2001
  06-29-2001  06-28-2002  54    0                              54    07-13-2002
  06-29-2002  06-28-2003  54    0                              54    07-13-2003
  06-29-2003  06-28-2004  54    0                              54    07-13-2004
  06-29-2004  05-01-2005  45

     TOTAL EARNED AMOUNT........................................:     378
     TOTAL EARNED AND PROJECTED AMOUNT.............................:     423




  G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

**Government Exhibit**
**C**

Aug 20 Case 1:04-cr-21538-JAL Document 13   Entered on FLSD Docket 08/23/2004   Page 34 of 44
850-671-6110                    p.9
FCC   olemamLegaL                35266  021                    p.3



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | CPD |
| **NUMBER:** | 5880.28 |
| **DATE:** | CN-06, 7/19/99 |
| **SUBJECT:** | Sentence Computation Manual (CCA of 1984) |

1. **PURPOSE AND SCOPE.** This Program Statement transmits the "Sentence Computation Manual" which establishes the policies and procedures for the computation of sentences imposed for violations of the United States Code under the statutes of the Comprehensive Crime Control Act of 1984 (CCCA).

On October 12, 1984, President Reagan signed the Comprehensive Crime Control Act of 1984 (CCCA) into law. Two major components of this law, the Sentencing Reform Act of 1984 (SRA) and the Insanity Reform Act of 1984, completely restructured the sentencing guidelines and policies of the United States Courts.

After the effective date of the SRA on November 1, 1987, a number of United States Court decisions found all or parts of the SRA unconstitutional. As a result, the SRA was implemented nationally in various ways.

On January 18, 1989, in **Mistretta v. U.S.**, the Supreme Court considered the constitutionality of the sentencing guidelines and ruled that the guidelines were constitutional. This Manual provides instructions for computing sentences imposed under the CCCA both before and after the **Mistretta** decision.

2. **DIRECTIVES AFFECTED**

   a. **Directives Rescinded.** None.

   b. **Directives Referenced.** None.

**Government Exhibit
D**

P.S. 5880.28
February 21, 1992
Page 1 - 40

**g.  Good Conduct Time**.  Subsection 3624(b) states, "(b) Credit toward service of sentence for satisfactory behavior.-- A prisoner who is serving a term of imprisonment of more than one year, other than a term of imprisonment for the duration of his life, shall receive credit toward the service of his sentence, beyond the time served, of fifty-four days at the end of each year of his term of imprisonment, beginning at the end of the first year of the term, unless the Bureau of Prisons determines that, during that year, he has not satisfactorily complied with such institutional disciplinary regulations as have been approved by the Attorney General and issued to the prisoner.  If the Bureau determines that during that year, the prisoner has not satisfactorily complied with such institutional regulations, he shall receive no such credit toward service of his sentence or shall receive such lesser credit as the Bureau determines to be appropriate.  The Bureau's determination shall be made within fifteen days after the end of each year of the sentence.  Such credit toward service of sentence vests at the time it is received.  Credit that has been vested may not later be withdrawn, and credit that has not been earned may not later be granted.  Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence."

For computation purposes, it is necessary to remember the following about subsection 3624(b):

(1)  54 days of GCT may be earned for each full year served on a sentence in excess of one year, with the GCT being

Aug 20 Case 1:04mm 21538-JAE Document 13   Entered on FLSD Docket 08/23/2004   Page 36 of 44
850-671-6110   p.11
FCC olemamLegaL   3526£ 021   p.5

PS 5880.28
(CN-03) February 14, 1997
Page 1 - 41

prorated for the last partial year.  No GCT can be earned on, or awarded to, a sentence of one year or less.

(2)  The BOP has 15 days after the end of each full year served to make a determination as to the amount of the 54 days that shall be awarded.  If the BOP makes no decision about the amount of GCT to award in the 15 days at the end of the year just served, then the entire 54 days will be automatically credited to the sentence on the Vested Date.  Therefore, before awarding any GCT on the Vested Date, staff shall review the SENTRY disciplinary log to determine if any GCT had been disallowed during the preceding anniversary period.  If no GCT was disallowed during the preceding anniversary period, then the GCT SENTRY data base shall be updated with the total amount of GCT possible to earn and a copy of the disciplinary log, as well as a copy of the GCT record (both signed and dated by the ISM staff member making the change and the auditor), shall be placed in the Judgment and Commitment File.

If some or all of the GCT had been disallowed during the preceding anniversary period and no BP-448 (Good Conduct Time Action Notice) has been received by the Vested Date that matches the disciplinary log record, then the disciplinary log shall be used as the official record for disallowing GCT on the Vested Date.  A copy of the disciplinary log shall be placed in the Judgment and Commitment File pending receipt of a BP-448 that matches the information on the disciplinary log.  After receipt of the BP-448 the disciplinary log copy shall be destroyed.  Again, an updated copy of the

PL 103-322, 1994 HR 3355 ⌣                                        Page 1 of 1

PL 103-322, September 13, 1994, 108 Stat 1796

UNITED STATES PUBLIC LAWS
103rd Congress - Second Session
Convening January 25, 1994
COPR. © WEST 1994 No Claim to Orig. U.S. Govt. Works

Additions and Deletions are not identified in this document.
For Legislative History of Act, see LH database or Report for
this Public Law in U.S.C.C. & A.N. Legislative History section.

PL 103-322 (HR 3355)
September 13, 1994
VIOLENT CRIME CONTROL AND LAW ENFORCEMENT ACT OF 1994

An Act to control and prevent crime.

Government Exhibit
E

PL 103-322, 1994 HR 335.                                        Page 1 of 1

## << 18 USCA § 4042 NOTE >>

SEC. 20404. APPLICATION TO PRISONERS TO WHICH PRIOR LAW APPLIES.

In the case of a prisoner convicted of an offense committed prior to November 1, 1987, the reference to supervised release in section 4042(b) of title 18, United States Code, shall be deemed to be a reference to probation or parole.

## << 18 USCA § 3624 >>

SEC. 20405. CREDITING OF "GOOD TIME".

Section 3624 of title 18, United States Code, is amended--
(1) by striking "he" each place it appears and inserting "the prisoner";
(2) by striking "his" each place it appears and inserting "the prisoner's";
(3) in subsection (d) by striking "him" and inserting "the prisoner"; and
(4) in subsection (b)--
(A) in the first sentence by inserting "(other than a prisoner serving a sentence for a crime of violence)" after "A prisoner"; and
(B) by inserting after the first sentence the following: "A prisoner who is serving a term of imprisonment of more than 1 year for a crime of violence, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's <<PUB #PG=1000457,1826>>sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with such institutional disciplinary regulations.".

SEC. 809. EARNED RELEASE CREDIT OR GOOD TIME CREDIT REVOCATION.

## << 28 USCA § 1932 >>

(a) IN GENERAL.--Chapter 123 of title 28, United States Code, is amended by adding at the end the following new section:

"§ 1932. Revocation of earned release credit

"In any civil action brought by an adult convicted of a crime and confined in a Federal correctional facility, the court may order the revocation of such earned good time credit under section 3624(b) of title 18, United States Code, that has not yet vested, if, on its own motion or the motion of any party, the court finds that--
"(1) the claim was filed for a malicious purpose;
"(2) the claim was filed solely to harass the party against which it was filed; or
"(3) the claimant testifies falsely or otherwise knowingly presents false evidence or information to the court.".

## << 28 USCA Ch. 123 >>

(b) TECHNICAL AMENDMENT.--The analysis for chapter 123 of title 28, United States Code, is amended by inserting after the item relating to section 1931 the following:
"1932. Revocation of earned release credit.".

## << 18 USCA § 3624 >>

(c) AMENDMENT OF SECTION 3624 OF TITLE 18.--Section 3624(b) of title 18, United States Code, is amended--
(1) in paragraph (1)--
(A) by striking the first sentence;
(B) in the second sentence--
(i) by striking "A prisoner" and inserting "Subject to paragraph (2), a prisoner";
(ii) by striking "for a crime of violence,"; and
(iii) by striking "such";
(C) in the third sentence, by striking "If the Bureau" and inserting "Subject to paragraph (2), if the Bureau";
(D) by striking the fourth sentence and inserting the following: "In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree."; and
(E) in the sixth sentence, by striking "Credit for the last" and inserting "Subject to paragraph (2), credit for the last"; and
(2) by amending paragraph (2) to read as follows:
"(2) Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.".

## << 18 USCA § 3626 NOTE >>

## << 11 USCA § 523 nt >>

## << 18 USCA § 3624 nt >>

## << 28 USCA §§ 1346 nt, 1915 nt, 1915A nt, 1932 nt >>

## << 42 USCA §§ 1997a nt, 1997b nt, 1997c nt, 1997e nt, 1997f nt, 1997h nt >>

**Government Exhibit**
**F**

PL 104-134, April 26, 1996, 110 Stat 1321

UNITED STATES PUBLIC LAWS
104th Congress - Second Session
Convening January 3, 1996

Copr. © West 1996. All rights reserved.

Additions and Deletions are not identified in this document.

PL 104-134 (HR 3019)
April 26, 1996
OMNIBUS CONSOLIDATED RESCISSIONS AND APPROPRIATIONS ACT OF 1996

An Act making appropriations for fiscal year 1996 to make a further downpayment toward a balanced budget, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

[This Act is displayed from the hand enrolled bill as received by the Publisher which did not specify the U.S. Statutes-At-Large internal pagination.]
SECTION 101. For programs, projects or activities in the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1996, provided as follows, to be effective as if it had been enacted into law as the regular appropriations Act:

AN ACT

Making appropriations for the Departments of Commerce, Justice, and State, the Judiciary, and related agencies for the fiscal year ending September 30, 1996, and for other purposes.

TITLE I--DEPARTMENT OF JUSTICE
GENERAL ADMINISTRATION
SALARIES AND EXPENSES

For expenses necessary for the administration of the Department of Justice, $74,282,000; including not to exceed $3,317,000 for the Facilities Program 2000, and including $5,000,000 for management and oversight of Immigration and Naturalization Service activities, both sums to remain available until expended: Provided, That not to exceed 48 permanent positions and 55 full-time equivalent workyears and $7,477,000 shall be expended for the Department Leadership Program, exclusive of augmentation that occurred in these offices in fiscal year 1995: Provided further, That not to exceed 76 permanent positions and 90 full-time equivalent workyears and $9,487,000 shall be expended for the Offices of Legislative Affairs, Public Affairs and Policy Development: Provided further, That the latter three aforementioned offices shall not be augmented by personnel details, temporary transfers of personnel on either a reimbursable or non-reimbursable basis or any other type of formal or informal transfer or reimbursement of personnel or funds on either a temporary or long-term basis.

<<PUB#PG=1000457,1321-1>>COUNTERTERRORISM FUND

For necessary expenses, as determined by the Attorney General, $16,898,000, to remain available until expended, to reimburse any Department of Justice organization for (1) the costs incurred in reestablishing the operational capability of an office or facility which has been damaged or destroyed as a result of the bombing of the Alfred P. Murrah Federal Building in Oklahoma City or any domestic or international terrorist incident, (2) the costs of providing support to counter, investigate or prosecute domestic or international terrorism, including payment of rewards in connection with these activities, and (3) the costs of conducting a terrorism threat assessment of Federal agencies and their facilities: Provided, That funds provided under this section shall be available only after the Attorney General notifies the Committees on Appropriations of the House of Representatives and the Senate in accordance with section 605 of this Act.

ADMINISTRATIVE REVIEW AND APPEALS

For expenses necessary for the administration of pardon and clemency petitions and immigration related activities, $38,886,000: Provided, That the obligated and unobligated balances of funds previously appropriated to the General Administration, Salaries and Expenses appropriation for the

PL 104-134, 1996 HR 301                                    Page 2 of 2

Executive Office for Immigration Review and the Office of the Pardon Attorney shall be merged with this appropriation.

VIOLENT CRIME REDUCTION PROGRAMS, ADMINISTRATIVE REVIEW AND APPEALS

For activities authorized by sections 130005 and 130007 of Public Law 103-322, $47,780,000, to remain available until expended, which shall be derived from the Violent Crime Reduction Trust Fund: Provided, That the obligated and unobligated balances of funds previously appropriated to the General Administration, Salaries and Expenses appropriation under title VIII of Public Law 103-317 for the Executive Office for Immigration Review shall be merged with this appropriation.

PL 104-134, 1996 HR 301° Page 1 of 3

GENERAL PROVISIONS--DEPARTMENT OF JUSTICE
SEC. 114. (a) GRANT PROGRAM.--Subtitle A of title II of the Violent Crime Control and Law
Enforcement Act of 1994 is amended to read as follows:

<< 42 USCA Ch. 136 >>

<<PUB#PG=1000457,1321-15>>"Subtitle A--Violent Offender Incarceration and
Truth-in-Sentencing Incentive Grants

<< 42 USCA § 13701 >>

"SEC. 20101. DEFINITIONS.

"Unless otherwise provided, for purposes of this subtitle--
"(1) the term 'indeterminate sentencing' means a system by which--
"(A) the court may impose a sentence of a range defined by statute; and
"(B) an administrative agency, generally the parole board, or the court, controls release within the
statutory range;
"(2) the term 'part 1 violent crime' means murder and nonnegligent manslaughter, forcible rape,
robbery, and aggravated assault as reported to the Federal Bureau of Investigation for purposes of
the Uniform Crime Reports; and
"(3) the term 'State' means a State of the United States, the District of Columbia, the
Commonwealth of Puerto Rico, the United States Virgin Islands, American Samoa, Guam, and the
Northern Mariana Islands.

<< 42 USCA § 13702 >>

"SEC. 20102. AUTHORIZATION OF GRANTS.

"(a) IN GENERAL.--The Attorney General shall provide Violent Offender Incarceration grants under
section 20103 and Truth-in-Sentencing Incentive grants under section 20104 to eligible States--
"(1) to build or expand correctional facilities to increase the bed capacity for the confinement of
persons convicted of a part 1 violent crime or adjudicated delinquent for an act which if committed
by an adult, would be a part 1 violent crime;
"(2) to build or expand temporary or permanent correctional facilities, including facilities on military
bases, prison barges, and boot camps, for the confinement of convicted nonviolent offenders and
criminal aliens, for the purpose of freeing suitable existing prison space for the confinement of
persons convicted of a part 1 violent crime; and
"(3) to build or expand jails.
"(b) REGIONAL COMPACTS.--
"(1) IN GENERAL.--Subject to paragraph (2), States may enter into regional compacts to carry out
this subtitle. Such compacts shall be treated as States under this subtitle.
"(2) REQUIREMENT.--To be recognized as a regional compact for eligibility for a grant under section
20103 or 20104, each member State must be eligible individually.
"(3) LIMITATION ON RECEIPT OF FUNDS.--No State may receive a grant under this subtitle both
individually and as part of a compact.
"(c) APPLICABILITY.--Notwithstanding the eligibility requirements of section 20104, a State that
certifies to the Attorney General that, as of the date of enactment of the Department of Justice
Appropriations Act, 1996, such State has enacted legislation in reliance on subtitle A of title II of the
Violent Crime Control and Law Enforcement Act, as enacted on September 13, 1994, and would in
fact qualify under those provisions, shall be eligible <<PUB#PG=1000457,1321- 16>>to receive a
grant for fiscal year 1996 as though such State qualifies under section 20104 of this subtitle.

<< 42 USCA § 13703 >>

"SEC. 20103. VIOLENT OFFENDER INCARCERATION GRANTS.

"(a) ELIGIBILITY FOR MINIMUM GRANT.--To be eligible to receive a minimum grant under this

section, a State shall submit an application to the Attorney General that provides assurances that the State has implemented, or will implement, correctional policies and programs, including truth-in-sentencing laws that ensure that violent offenders serve a substantial portion of the sentences imposed, that are designed to provide sufficiently severe punishment for violent offenders, including violent juvenile offenders, and that the prison time served is appropriately related to the determination that the inmate is a violent offender and for a period of time deemed necessary to protect the public.

"(b) ADDITIONAL AMOUNT FOR INCREASED PERCENTAGE OF PERSONS SENTENCED AND TIME SERVED.--A State that received a grant under subsection (a) is eligible to receive additional grant amounts if such State demonstrates that the State has, since 1993--

"(1) increased the percentage of persons arrested for a part 1 violent crime sentenced to prison; or
"(2) increased the average prison time actually served or the average percent of sentence served by persons convicted of a part 1 violent crime.

Receipt of grant amounts under this subsection does not preclude eligibility for a grant under subsection (c).

"(c) ADDITIONAL AMOUNT FOR INCREASED RATE OF INCARCERATION AND PERCENTAGE OF SENTENCE SERVED.--A State that received a grant under subsection (a) is eligible to receive additional grant amounts if such State demonstrates that the State has--

"(1) since 1993, increased the percentage of persons arrested for a part 1 violent crime sentenced to prison, and has increased the average percent of sentence served by persons convicted of a part 1 violent crime; or
"(2) has increased by 10 percent or more over the most recent 3-year period the number of new court commitments to prison of persons convicted of part 1 violent crimes.

Receipt of grant amounts under this subsection does not preclude eligibility for a grant under subsection (b).

## << 42 USCA § 13704 >>

"SEC. 20104. TRUTH-IN-SENTENCING INCENTIVE GRANTS.

"(a) ELIGIBILITY.--To be eligible to receive a grant award under this section, a State shall submit an application to the Attorney General that demonstrates that--

"(1) such State has implemented truth-in-sentencing laws that--
"(A) require persons convicted of a part 1 violent crime to serve not less than 85 percent of the sentence imposed (without counting time not actually served, such as administrative or statutory incentives for good behavior); or
"(B) result in persons convicted of a part 1 violent crime serving on average not less than 85 percent of the sentence imposed (without counting time not actually served, such as administrative or statutory incentives for good behavior);
"(2) such State has truth-in-sentencing laws that have been enacted, but not yet implemented, that require such State, <<PUB#PG=1000457,1321-17>>not later than 3 years after such State submits an application to the Attorney General, to provide that persons convicted of a part 1 violent crime serve not less than 85 percent of the sentence imposed (without counting time not actually served, such as administrative or statutory incentives for good behavior); or
"(3) in the case of a State that on the date of enactment of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1996, practices indeterminate sentencing with regard to any part 1 violent crime--
"(A) persons convicted of a part 1 violent crime on average serve not less than 85 percent of the prison term established under the State's sentencing and release guidelines; or
"(B) persons convicted of a part 1 violent crime on average serve not less than 85 percent of the maximum prison term allowed under the sentence imposed by the court (not counting time not actually served such as administrative or statutory incentives for good behavior).
"(b) EXCEPTION.--Notwithstanding subsection (a), a State may provide that the Governor of the State may allow for the earlier release of--
"(1) a geriatric prisoner; or
"(2) a prisoner whose medical condition precludes the prisoner from posing a threat to the public,

but only after a public hearing in which representatives of the public and the prisoner's victims have had an opportunity to be heard regarding a proposed release.